UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

SUSAN DULING, MARGARET                :
ANDERSON and LAKEYA SEWER,
on behalf of themselves and           :
all others similarly situated,
                                      :
                    Plaintiffs,          06 Civ. 10197 (LTS)(HBP)
                                      :
    -against-                            OPINION
                                      :  AND ORDER
GRISTEDE'S OPERATING CORP.,
et al.,                               :

                    Defendants.       :

----------------------------------X


        PITMAN, United States Magistrate Judge:


I.   Introduction


        By notice of motion dated May 8, 2009 (Docket Item

110), defendants move for the entry of a protective order limit-

ing plaintiffs' use of employee personnel files produced by

defendants.

        For the reasons set forth below, defendants' motion is

granted.  The specific provisions of the Protective Order are

outlined below.


II.  Facts


        This is an employment discrimination action brought as

a class action.  Plaintiffs allege that defendants (collectively

referred to as "Gristede's"), entities which operate several

retail grocery store chains in the New York metropolitan area, systematically discriminate against women.  Specifically, plaintiffs allege that defendants channel women into cashier and bookkeeper positions.  According to plaintiffs, cashiers and bookkeepers work fewer hours and are paid less than those in other positions, and, therefore, the positions available to women are less desirable than those available to men.  Plaintiffs allege that defendants also discriminate against women in the promotion of employees to managerial positions, using a "tap on the shoulder" method of selecting employees for promotion rather than posting job openings, as well as promoting male employees in substantially larger numbers than female employees.  Plaintiffs seek to represent "all current and former female Gristede's employees who worked for Gristede's at any time between November 2, 2004 and the date of final judgment in this matter" (Plaintiffs' Memorandum of Law in Support of Motion for Class Certification, dated January 30, 2009, at 1).

        Defendants' motion for a protective order arises out of plaintiffs' document request for personnel files of Gristede's employees (see Order, issued by the undersigned on May 29, 2007, attached to Declaration of Lewis M. Steel in Opposition of Defendants' Motion for Protective Order, dated May 21, 2009 ("Steel Decl.") as Ex. 2 ("5/29/07 Order") at 2, 5).  By orders issued on May 29 and December 17, 2007, I directed defendants to

produce the personnel files for all employees who worked at any
of their three largest stores anytime between 1999 and the
present (5/29/07 Order at 5; Order, issued by the undersigned on
December 17, 2007, attached to Steel Decl. as Ex. 3 ("12/17/07
Order") at 1-2).  Because the ordered production covers employees
of both genders and extends back to 1999, it includes personnel
files of both putative class members and individuals not con-
nected to the case in any way.  According to defendants, the
files contain documents related to the employees' compensation,
discipline, medical conditions, financial accounts, background
checks, child support obligations, legal matters, police investi-
gations, immigration status and arbitrations, in addition to
other information defendants deem personal (Declaration of
Michael J. Puma in Support of Defendants' Motion for Protective
Order, executed May 8, 2009 ("Puma Decl. in Support") ¶ 6;
Memorandum of Law in Support of Defendants' Motion for Protective
Order ("Defs.' Mem. in Support") at 1, 5; Reply Memorandum of Law
in Further Support of Defendants' Motion for Protective Order
("Defs.' Reply Mem.") at 3).

        Defendants have produced 131 personnel files that
pertain to the employees who worked at defendants' three largest
stores as of the date of the production, and have prepared for
production the personnel files of the employees, numbering around
eight or nine hundred, who formerly worked for any of the three

stores at some point between 1999 and the present (Puma Decl. in
Support ¶ 5; Steel Decl. ¶¶ 4(c), 6-7; Defs.' Mem. in Support at
2, 2 n.1; Letter from Michael Puma to Cara Greene, dated April
28, 2009, attached to Puma Decl. in Support as Ex. E ("4/28/09
Puma Letter"); Email from Michael Puma to Lewis Steel, dated May
1, 2009, attached to Puma Decl. in Support as Ex. F ("5/1/09 Puma
Email"); Dep. of Michael McCormick, 66:21-69:7, Mar. 26, 2009,
attached to Steel Decl. as Ex. 4).  Defendants are apparently
refusing to produce this last group of files in the absence of a
confidentiality order governing their use (Steel Decl. ¶ 9;
4/28/09 Puma Letter; 5/1/09 Puma Email; Defs.' Mem. in Support at
2-3).[1]  Defendants argue that a protective order governing the
use of the files is appropriate because of the potential for
disclosure of sensitive information to the employees' co-workers
or others (Defs.' Mem. in Support at 5; Defs.' Reply Mem. at 2).

        Defendants contacted plaintiffs on April 21, 2009
requesting their consent to a confidentiality agreement governing

---

[1]Plaintiffs contend that defendants' refusal to produce the
documents until a protective order is entered violates
defendants' discovery obligations and my May 29 and December 17,
2007 Orders (Plaintiffs' Memorandum of Law in Opposition to
Defendants' Motion for Protective Order ("Pls.' Mem. in Opp.") at
2-3; Email from Lewis Steel to Michael Puma, dated May 1, 2009,
attached to Puma Decl. in Support as Ex. G ("5/1/09 Steel
Email"); Email from Lewis Steel to Michael Puma, dated May 4,
2009, attached to Puma Decl. in Support as Ex. I ("5/4/09 Steel
Email"); see Steel Decl. ¶¶ 5-8; 5/29/07 Order at 5; 12/17/07
Order at 1-2).  While defendants' failure to produce these
documents does appear to contravene their discovery obligations,
it is not the focus of my decision on this motion.

use of the files (Email from Michael Puma to Cara Greene, dated
April 21, 2009, attached to Puma Decl. in Support as Ex. B
("4/21/09 Puma Email"); Defs.' Mem. in Support at 2).  After an
initial failure on plaintiffs' part to respond, the parties
discussed the content of a potential confidentiality agreement
and order.  Although both sides agreed to some sort of confiden-
tiality order, they were unable to reach agreement on specific
provisions (Puma Decl. in Support ¶¶ 7, 12; 4/21/09 Puma Email
(attaching proposed confidentiality agreement); Email from
Michael Puma to Cara Greene, dated April 24, 2009, attached to
Puma Decl. in Support as Ex. C; Email from Cara Greene to Michael
Puma, dated April 24, 2009, attached to Puma Decl. in Support as
Ex. D; 4/28/09 Puma Letter; 5/1/09 Puma Email; 5/1/09 Steel
Email; Email from Michael Puma to Lewis Steel, dated May 4, 2009,
attached to Puma Decl. in Support as Ex. H ("5/4/09 Puma Email");
5/4/09 Steel Email; Defs.' Mem. in Support at 2-3).

On May 8, 2009, defendants moved this Court for a
protective order.  Defendants clearly had made a good faith
effort to resolve the dispute before filing this motion, as
required by Fed.R.Civ.P. 26(c)(1).  The parties made subsequent
proposals regarding the content of a confidentiality order in
their submissions on the motion (Defendants' Proposed Stipulation
of Confidentiality and Protective Order, attached to Puma Decl.
as Ex. A ("Defs.' Proposed Order"); Plaintiffs' Proposed Stipula-

tion of Confidentiality and Protective Order, attached to Steel
Decl. as Ex. 1 ("Pls.' Proposed Order"); Defendants' Revised
Proposed Stipulation of Confidentiality and Protective Order,
attached to Declaration of Michael J. Puma in Further Support of
Defendants' Motion for Protective Order ("Puma Reply Decl.") as
Ex. A ("Defs.' Revised Proposed Order")).  According to defen-
dants, the parties again conferred in an attempt to resolve this
issue after plaintiffs attached a proposed protective order in
their opposition to defendants' motion, but the parties were
still unable to reach agreement (Defs.' Reply Mem. at 1-2).

        As of their final submissions, plaintiffs and defen-
dants had reached several points of agreement with regard to the
content of a protective order.  They agreed that medical records
(Steel Decl. ¶ 10; Pls.' Proposed Order ¶ 2; Pls.' Mem. in Opp.
at 5; 5/4/09 Steel Email), child support documents (Pls.' Pro-
posed Order ¶ 2; Pls.' Mem. in Opp. at 5), attachment orders
(Pls.' Proposed Order ¶ 2; Pls.' Mem. in Opp. at 5) and criminal
conviction records[2] (Pls.' Mem. in Opp. at 5) contained in the
personnel files should be kept confidential.  They also agreed to
confidentiality for the categories of information enumerated in

---

    [2]Plaintiff's actual proposed order does not contain any
reference to criminal conviction records, but plaintiffs concede
in their memorandum of law that they do not object to affording
confidential status to criminal conviction records (Pls.'
Proposed Order; Pls.' Mem. in Opp. at 5; see Defs.' Reply Mem. at
5 n.2).

Fed.R.Civ.P. 5.2 -- social security numbers, taxpayer identification numbers, birth dates, names of minors, and financial account numbers -- and agreed that this information should be given confidential treatment for all purposes, not only for court filings as the actual rule provides (Steel Decl. ¶ 10; Pls.' Proposed Order ¶ 2; Pls.' Mem. in Opp. at 10; 5/1/09 Steel Email; 5/4/09 Steel Email).  In addition, plaintiffs agreed that the names of individual employees whose information is contained in the personnel files, except for the named plaintiffs in this action, may not be shared with the media without the employee's permission (Pls.' Proposed Order ¶ 3; Pls.' Mem. in Opp. at 10-11; see Steel Decl. ¶ 10), though it is not entirely clear whether defendants accept this entirely or maintain further that no information in the personnel files should be revealed to the media under any circumstances (see Defs.' Mem. in Opp. at 5), as defendants' proposed orders do not list the media as a permitted recipient of information contained in the files (Defs.' Proposed Order ¶ 3; Defs.' Revised Proposed Order ¶ 3).  Finally, as of defendants' reply submissions, plaintiffs and defendants appeared to have agreed that plaintiffs' counsel should be required merely to inform individuals viewing any confidential materials of their confidential status, rather than having such individuals read the confidentiality agreement and sign an acknowledgment form (Pls.' Proposed Order ¶ 2; Pls.' Mem. in Opp. at 5, 8-9; Defs.' Revised

7

Proposed Order ¶ 4; Defs.' Reply Mem. at 5-6; <u>see</u> Defs.' Proposed Order ¶ 4).

However, plaintiffs and defendants still disagree on several features of any potential protective order.  In addition to medical records, child support documents, attachment orders and criminal conviction records, defendants seek to keep confidential termination and disciplinary records, immigration records, banking information, compensation information and employment applications (Defs.' Reply Mem. at 3-5).  Plaintiffs maintain that except for medical records, child support documents, attachment orders, material covered under Rule 5.2 and, presumably, criminal convictions, they should be permitted to discuss the information in the personnel files freely with "all plaintiffs, putative class members or class members, or persons they believe may have information relevant to any cases involving Gristede's employment and/or pay practices" (Pls.' Proposed Order ¶ 3).  This provision evidences plaintiffs' opposition to affording confidential treatment to all aspects of the personnel files, and the last category of potential recipients plaintiffs list also evokes what appears to be the principal issue in dispute here -- whether plaintiffs' counsel may use the information contained in the personnel files in other litigation, particularly, other employment actions against Gristede's in which they are also involved.

Plaintiffs argue that any protective order entered should allow their counsel to use the personnel files at issue here in other litigations against Gristede's (Pls.' Mem. in Opp. at 1, 6-8; 5/1/09 Steel Email; 5/4/09 Steel Email; see Pls.' Proposed Order ¶¶ 3, 6).  Defendants contend in response that plaintiffs' counsel's use of the personnel files should be restricted to the purposes of this action (Defs.' Reply Mem. at 1-2; 5/4/09 Puma Email; see Defs.' Proposed Order ¶¶ 2, 7; Defs.' Revised Proposed Order ¶¶ 2, 7).

III. Analysis

A.  Applicable Law

Fed.R.Civ.P. 26(c) authorizes a federal court, for good cause, to issue "an order to protect a party or person [from whom discovery is sought] from annoyance, embarrassment, oppression, or undue burden or expense."  The rule serves in part to protect parties' privacy interests.  Seattle Times Co. v. Rhinehart, 467 U.S. 20, 35 n.21 (1984); Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1114 n.10 (3d Cir. 1986).  Rule 26(c) "allows for the crafting of appropriate relief, including 'that the disclosure or discovery may be had only on specified terms and conditions.'" Flaherty v. Seroussi, 209 F.R.D. 300, 304 (N.D.N.Y. 2002), quoting Fed.R.Civ.P. 26(c).  "Protective orders can take a variety of forms in order to fit the circumstances of the case."

9

Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc., 07 Civ. 2014 (SWK), 2008 WL 199537 at *2 (S.D.N.Y. Jan. 22, 2008) (Kram, D.J.).

        The party seeking a protective order bears the burden of establishing that good cause for the order exists.  Gambale v. Deutsche Bank AG, 377 F.3d 133, 142 (2d Cir. 2004); Dove v. Atl. Capital Corp., 963 F.2d 15, 19 (2d Cir. 1992); Penn Group, LLC v. Slater, 07 Civ. 729 (MHD), 2007 WL 2020099 at *13 (S.D.N.Y. June 13, 2007) (Dolinger, M.J.); Condit v. Dunne, 225 F.R.D. 113, 115 (S.D.N.Y. 2004) (Leisure, D.J.).  Good cause is established by "demonstrating a particular need for protection." Cipollone v. Liggett Group, Inc., supra, 785 F.2d at 1121; see In re Terrorist Attacks on Sept. 11, 2001, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006) (Casey, D.J.) ("Ordinarily, good cause [for a protective order] exists when a party shows that disclosure will result in a clearly defined, specific and serious injury.") (internal quotations and citations omitted); Koster v. Chase Manhattan Bank, 93 F.R.D. 471, 479 (S.D.N.Y. 1982) (Goettel, D.J.).  "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.  Moreover, the harm must be significant, not a mere tri-fle."  Schiller v. City of New York, 04 Civ. 7922 (KMK)(JCF), 04 Civ. 7921 (KMK)(JCF), 2007 WL 136149 at *5 (S.D.N.Y. Jan. 17, 2007) (Francis, M.J.), quoting Cipollone v. Liggett Group, Inc.,

<u>supra</u>, 785 F.2d at 1121; <u>accord</u> <u>Loussier v. Universal Music</u>
<u>Group, Inc.</u>, 214 F.R.D. 174, 177 (S.D.N.Y. 2003) (Ellis, M.J.).

> The showing necessary to establish such potential harm
> depends upon the type of harm being threatened and the
> type of order being sought.  At the least, the moving
> party must provide the court with information from
> which it can reasonably conclude that the nature and
> magnitude of the moving party's interest are such that
> protective intervention by the court is justified.

<u>Koster v. Chase Manhattan Bank</u>, <u>supra</u>, 93 F.R.D. at 479 (internal
quotations and citations omitted).

Although the burden is on the movant to establish good
cause for the entry of a protective order, the court ultimately
weighs the interests of both sides in fashioning an order.
<u>Mitchell v. Fishbein</u>, 227 F.R.D. 239, 245 (S.D.N.Y. 2005)
(Gorenstein, M.J.) ("'[U]nder Rule 26(c), the appropriateness of
protective relief from discovery depends upon a balancing of the
litigation needs of the discovering party and any countervailing
protectible interests of the party from whom discovery is
sought.'"), <u>quoting</u> <u>Apex Oil Co. v. DiMauro</u>, 110 F.R.D. 490, 496
(S.D.N.Y. 1985) (Dolinger, M.J.); <u>Savitt v. Vacco</u>, 95-CV-1842
(RSP/DRH), 95-CV-1853 (RSP/DRH), 1996 WL 663888 at *4 (N.D.N.Y.
Nov. 8, 1996) ("A court must strike a balance between plaintiffs'
'desire for full disclosure of relevant information against the
defendant[s'] desire to preserve the privacy of [their] employ-
ees.'"), <u>quoting</u> <u>Rossini v. Ogilvy & Mather, Inc.</u>, 798 F.2d 590,
601 (2d Cir. 1986) (order in sex discrimination employment class

action giving plaintiffs' counsel access to defendants' employ-ees' personnel files but precluding access by plaintiffs them-selves was "a proper attempt to balance the plaintiffs' desire for full disclosure of relevant information against the defen-dant's desire to preserve the privacy of its employees"); Koster v. Chase Manhattan Bank, supra, 93 F.R.D. at 479 (Once the movant has established good cause for a protective order, "the court should consider other factors that may militate against issuing a protective order [such as] whether the order will prevent the threatened harm, whether there are less restrictive means of preventing the threatened harm, the interests of the party opposing the motion, and the interests of the public.").

Under Rule 26(c), the trial court has "broad discretion . . . to decide when a protective order is appropriate and what degree of protection is required." Seattle Times Co. v. Rhinehart, supra, 467 U.S. at 36; see also Dove v. Atl. Capital Corp., supra, 963 F.2d at 20 ("[T]he grant or denial of a protec-tive order lies within the sound discretion of the district court."); Galella v. Onassis, 487 F.2d 986, 997 (2d Cir. 1973) ("The grant and nature of protection is singularly within the discretion of the district court."); Condit v. Dunne, supra, 225 F.R.D. at 116.

B.  <u>Defendants' Motion</u>

    1.  Propriety of a
        <u>Protective Order</u>[3]

Defendants argue that a protective order is necessary here because of the harm and embarrassment Gristede's employees would experience if information contained in their personnel files such as "their private medical records, criminal records, banking records, background check records, immigration records, and disciplinary and compensation records" were disseminated widely (Defs.' Reply Mem. at 2).  Plaintiffs argue in response that to justify a protective order defendants may not simply invoke the employees' general privacy interests (Pls.' Mem. in Opp. at 4-5), but must show specific past examples of employees having been harmed through the disclosure of information in their

---

[3]Although plaintiffs appear to have agreed in principle to a (somewhat limited) protective order, they also continue to dispute the propriety of any protective order (Pls.' Mem. in Opp. at 1-2 ("Notwithstanding that Defendants' motion is groundless and misleading, to expedite resolution, Plaintiffs are submitting . . . a counter proposed Stipulation of Confidentiality and Protective Order.")).  Because plaintiffs apparently still oppose the entry of any protective order (Pls.' Mem. in Opp. at 4-5 ("Defendants have not met their high burden of establishing the need for a protective order. . . . Defendants' failure to articulate adequate grounds for a protective order should resolve this motion against them.")), I shall address whether any protective order is appropriate before considering the specific provisions of such an order.

personnel files (Pls.' Mem. in Opp. at 1; 5/1/09 Steel Email; <u>see</u> 5/4/09 Steel Email; Steel Decl. ¶ 10).[4]

Although "[t]he fact that sensitive information is involved in litigation gives a party neither an absolute nor automatic right to have the discovery process hindered," <u>Johnson Foils, Inc. v. Huyck Corp.</u>, 61 F.R.D. 405, 409 (N.D.N.Y. 1973), courts have generally characterized personnel files as confidential and found it appropriate to enter protective orders governing their use in litigation because of the inherent potential for harm or embarrassment if the information they contain is revealed.

> The court generally regards personnel files of employees to be confidential by their nature.  The subjects of such files are often non-parties to the litigation. Such files commonly contain addresses, phone numbers, income information, medical histories, employment discipline, criminal records, and other sensitive, personal information having little or no relevancy to the issues in litigation.  To permit wide dissemination of personnel files would result in a clearly defined, serious, and unnecessary injury to the privacy of the employee who is not a party to the lawsuit.  Revelation of such information could cause economic or emotional harm.  The files could contain embarrassing material. They commonly contain confidential material.  Justice

---

[4]Plaintiffs also suggest that a protective order is unnecessary because, with the regard to the personnel files of putative class members, counsel is already inclined to consider those employees' privacy concerns and, plaintiffs claim, are also sensitive to the interests of non-party employees (Pls.' Mem. in Opp. at 2, 5).  However, as defendants point out, plaintiffs' counsel has no obligation, and arguably no incentive, to protect the privacy of the employees who are not putative class members (<u>see</u> Defs.' Reply Mem. at 3-4).  Thus, plaintiffs' contention does not affect the need for a protective order.

> requires protection against wide dissemination of such
> confidential, personal information.

Dahdal v. Thorn Americas, Inc., No. Civ.A. 97-2119-GTV, 1997 WL
599614 at *1 (D. Kan. Sept. 15, 1997); see also Donald v. Rast,
927 F.2d 379, 381 (8th Cir. 1991) (recognizing "the confidential
nature of the information contained in a police officer's person-
nel file"); Williams v. Art Inst. of Atlanta, No. 1:06-CV-0285-
CC/AJB, 2006 WL 3694649 at *16 (N.D. Ga. Sept. 1, 2006) (finding
good cause to enter a protective order preventing disclosure of
personnel records to third parties because "employee . . .
personnel information [is] private information that should not be
widely disseminated"); Mitchell v. Metro. Life Ins. Co., Inc., 03
Civ. 10294 (WHP), 2004 WL 2439704 at *2 (S.D.N.Y. Nov. 2, 2004)
(Pauley, D.J.) (entering a protective order to maintain confiden-
tiality of defendants' personnel files pertaining to non-party
employees because the files "contain[ed] sensitive data entitled
to protection, such as social security numbers, disciplinary
records and information relating to personal circumstances (e.g.,
disability and martial status)"); Williams v. Bd. of County
Comm'rs of Unified Gov't of Wyandotte County/Kansas City, KS, No.
CIV. A. 98-2485-JTM, 2000 WL 133433 at *1 (D. Kan. Jan. 21, 2000)
("recogniz[ing] that personnel files and records . . . are
confidential in nature and that, in most circumstances, they
should be protected from wide dissemination"); Gillard v. Boulder
Valley Sch. Dist. Re.-2, 196 F.R.D. 382, 385 (D. Colo. 2000)

15

(personnel records are "normally . . . entitled to some degree of confidentiality"); Ladson v. Ulltra East Parking Corp., 164 F.R.D. 376, 377 n.2 (S.D.N.Y. 1996) (Kaplan, D.J.) (noting that "[l]egitimate privacy concerns exist with regard to personnel files" and that they are appropriately addressed through a protective order); Frank v. Capital Cities Commc'ns, Inc., 80 Civ. 2188 (CSH), 1987 WL 19021 at *3-*4 (S.D.N.Y. Oct. 16, 1987) (Haight, D.J.) (granting protective order limiting plaintiffs' access to personnel records of defendants' employees because "[d]efendants clearly have a strong and legitimate interest in maintaining strict control over access to this information").

Accordingly, even though defendants have not provided specific examples of harm to Gristede's employees, as plaintiffs request, the harm that would result from the disclosure of the undisputedly personal information contained in the personnel establishes a "particular need for protection." Cipollone v. Liggett Group, Inc., supra, 785 F.2d at 1121; see Dahdal v. Thorn Americas, Inc., supra, 1997 WL 599614 at *1 (finding that disclosing personnel files "would result in a clearly defined, serious, and unnecessary injury to the privacy of the employee who is not a party to the lawsuit").

Thus, defendants have demonstrated good cause for the entry of a protective order.  Balancing plaintiffs' interest in unrestricted use of the files against defendants' interest in the

16

privacy of their employees' personal information, <u>see</u> <u>Mitchell v.</u>
<u>Fishbein</u>, <u>supra</u>, 227 F.R.D. at 245; <u>Savitt v. Vacco</u>, <u>supra</u>, 1996
WL 663888 at *4; <u>Koster v. Chase Manhattan Bank</u>, <u>supra</u>, 93 F.R.D.
at 479, a protective order would not cause harm to plaintiffs
sufficient to outweigh defendants' privacy interests.  <u>See</u>
<u>Williams v. Art Inst. of Atlanta</u>, <u>supra</u>, 2006 WL 3694649 at *16
(the privacy interests of employers and employees are "clearly
more important than Plaintiff having unfettered access to [em-
ployee personnel files]").  Plaintiffs' concerns that limitations
on their use of the files will hinder their ability to develop
evidence (Pls.' Mem. in Opp. at 1, 8-9) and interfere with the
public's purported "right to know and evaluate a case of this
nature" (Pls.' Mem. in Opp. at 2) can be substantially alleviated
by a protective order crafted to balance plaintiffs' and defen-
dants' interests.

        Accordingly, I find the entry of an order governing the
use of the personnel files produced by Gristede's appropriate
here, and will discuss the content of such an order below.

        2.   Contours of a
             Protective Order

             a.   Which Parts of
                  the Personnel Files
                  Should Be Covered

        Plaintiffs argue that defendants' proposed order is
overbroad because it covers all the documents in the personnel
files, rather than targeting only the small group of documents
that plaintiffs concede are private (Pls.' Mem. in Opp. at 5-6).
But termination and disciplinary records, immigration records,
banking information, compensation information and employment
applications -- like medical records, child support documents,
attachment orders and criminal conviction records -- often
implicate privacy concerns and have the potential to embarrass
the subject employee if revealed.  Given how few of the documents
contained in the personnel files are likely to lack any privacy
implications, a comprehensive approach is more sensible here than
a piecemeal one.  Although the private nature and potential
embarrassment associated with the information contained in the
personnel files will surely vary in degree from document to
document, a protective order covering the entirety of the files
will not hinder plaintiffs' ability to prepare their case if it
prescribes the expeditious mechanism to which plaintiffs and
defendants already appear to have agreed for informing people of

the documents' confidential status.[5]  It is certainly not true in
this case, as plaintiffs assert, that "[t]he harm of too much
confidentiality . . . greatly outweighs any need for confidenti-
ality" (Pls.' Mem. in Opp. at 6).  An appropriate intermediate
level of confidentiality can be achieved here with an order that
balances the interests of the parties.

> b.  Disclosure to
>     the Media

     Plaintiffs concede that the names of individual employ-
ees whose personnel files have been produced may not be revealed
to the media without the employee's permission (Pls.' Proposed
Order ¶ 3; see Steel Decl. ¶ 10; Pls.' Mem. in Opp. at 11).
Neither of defendants' proposed orders appears to contemplate any
disclosure to the media (Defs.' Proposed Order ¶ 3; Defs.'

---

[5]Plaintiffs objected to the requirement defendants had
initially proposed for sharing confidential information -- that
any person to whom the materials are disclosed read the
confidentiality agreement and sign an acknowledgment form (see
Defs.' Proposed Order ¶ 4) -- arguing that it was burdensome and
would impede their ability to prepare their case (Pls.' Mem. in
Opp. at 1, 8-9; 5/1/09 Steel Email; see 5/4/09 Steel Email).
Defendants' most recent proposal, however, eliminates the
signature requirement, adopting instead the more limited
requirement, substantially the same as what plaintiffs proposed,
that plaintiffs' counsel simply inform individuals viewing the
records that their content must be kept confidential (Defs.'
Revised Proposed Order ¶ 4; Defs.' Reply Mem. at 5-6; see Pls.'
Proposed Order ¶ 2).  Given the less burdensome alternative
defendants have now accepted, plaintiffs' concern that a
confidentiality order would prejudice their ability to develop
evidence is significantly lessened, if not eliminated.

Revised Proposed Order ¶ 3).  Balancing defendants' interest in
the privacy of their employees' personal information with plain-
tiffs' concern for the public's interest in knowing about an
employment discrimination action against a large company, I shall
allow plaintiffs to disclose to the media (1) any information
from the personnel files of the named plaintiffs and (2) informa-
tion from the personnel files of employees other than the named
plaintiffs provided that the information is disclosed in a manner
that precludes the association of any specific item of informa-
tion with any particular individual.  For example, plaintiffs
could compile the average wages of male employees and female
employees and disclose that information.  They could not, how-
ever, disclose specific wage information concerning anyone other
than a named plaintiff.

> c.   Application to Documents
>      Previously Produced

        Plaintiffs object to the provision in defendants'
proposed order which provides that the parties may designate
materials they have already produced as confidential and which
plaintiffs argue is written to encompass documents beyond person-
nel files[6] (Pls.' Mem. in Opp. at 10).  Defendants' proposal
states:

---

[6]Despite their objection, plaintiffs' proposed order
contains an identical provision (Pls.' Proposed Order ¶ 4).

> The inadvertent or unintentional disclosure by any party of Confidential Material, regardless of whether the information was so designated at the time of the disclosure, shall not be deemed a waiver in whole or in part of a party's claim of confidentiality, either as to the specific information disclosed or as to any other information disclosed or as to any other information relating thereto on the same or related subject matter.

(Defs.' Proposed Order ¶ 5; Defs.' Revised Proposed Order ¶ 5). However, the confidentiality created by defendants' proposal is limited by its terms to the personnel files produced in this action (Defs.' Proposed Order ¶ 1; Defs.' Revised Proposed Order ¶ 1).  The protective order I enter will cover personnel files already produced by Gristede's and personnel files that are produced in the future, but will not cover any documents other than personnel files.  Gristede's has not made any showing that any other class of documents should be afforded confidential treatment.

### d.  Use in Other Litigation

Plaintiffs object to the provisions of defendants' proposed order that would limit plaintiffs' counsel's use of the personnel files to the instant action (Pls.' Mem. in Opp. at 1, 6-8; 5/1/09 Steel Email; 5/4/09 Steel Email; see Pls.' Proposed Order ¶¶ 3, 6).  Plaintiffs' counsel represents plaintiffs in several other employment actions against Gristede's and argues that it should be permitted to use the personnel files produced

here in those actions as well (Pls.' Mem. in Opp. at 1, 6-8;
5/1/09 Steel Email; 5/4/09 Steel Email; see Pls.' Proposed Order
¶¶ 3, 6).  Plaintiffs' proposed order would allow plaintiffs'
counsel to use the information in the personnel files, subject to
the confidentiality restrictions in their version of the protec-
tive order, "in the course of other matters or actions" and to
discuss personnel documents with "persons they believe may have
information relevant to any cases involving Gristede's employment
and/or pay practices" (Pls.' Proposed Order ¶¶ 3, 6).

Plaintiffs claim that their counsel's use of the
personnel files produced in this action in other litigations is
endorsed by an Order I issued in this action on March 14, 2008
(Pls.' Mem. in Opp. at 1, 7-8; 5/1/09 Steel Email).  That Order
provides, in relevant part:  "To the extent responsive documents
have been produced to plaintiffs' counsel in other litigations,
the documents need not be produced a second time so long as
responsive documents produced in other litigations are expressly
identified by defendants in a clear, unambiguous manner" (Order,
dated March 14, 2008, attached to Steel Decl. as Ex. 9, at 1-2)
(emphasis added here).  My Order does not permit counsel to make
unfettered use of any documents produced in one action in another
related action; rather, it merely provides that when a party has
produced documents in one action that are also discoverable in a
second action involving the same opposing counsel, that party

22

need not produce the same documents a second time but may instead identify them from the previous production.  The Order does not entitle plaintiffs' counsel to use information produced in the instant litigation in another action against Gristede's except perhaps to the extent that the information is otherwise discoverable in the other action and responsive to actual document requests served in that action.

Although the cases plaintiffs cite for this proposition are slightly off point (see Pls.' Mem. in Opp. at 8),[7] it is well established that the Federal Rules of Civil Procedures create no automatic prohibition against using discovery obtained in one litigation in another litigation.[8]  Dove v. Atl. Capital Corp.,

---

[7]These cases addressed the strategic use of general information gleaned from discovery in one case in another case, rather than the direct use of particular documents in the second case.  See E.E.O.C. v. Morgan Stanley & Co., Inc., 132 F. Supp. 2d 146, 158 (S.D.N.Y. 2000) (Lynch, D.J.) ("If a lawyer, educated about Morgan Stanley's employment practices by reviewing documents in one case, 'uses' the knowledge thus obtained to make better discovery demands in another case, or otherwise to improve his or her strategic decisions in such other matter, that is a normal consequence of the discovery process."); Leonia Amusement Corp. v. Loew's Inc., 18 F.R.D. 503, 508 (S.D.N.Y. 1955) (agreeing with counsel's proposition that "with respect to general information that comes to him here and is relevant to another action he should be able to use that information in any way which the law permits").

[8]Courts are quick to limit the use of discovery materials to the litigation at hand, however, when the party seeking to use them in another action is acting in bad faith.  See Dove v. Atl. Capital Corp., supra, 963 F.2d at 19 (describing other instances where federal courts had entered protective orders because it appeared that the "federal action had been brought chiefly for
(continued...)

23

supra, 963 F.2d at 19-20 (district court did not abuse its
discretion by declining to enter a protective order prohibiting
parties from using discovery in that litigation in another action
in the United Kingdom); American Tel. & Tel. Co. v. Grady, 594
F.2d 594, 597 (7th Cir. 1979) ("several district courts have
refused to enter protective orders which prevent disclosure to
others litigating similar issues on the grounds that the Federal
Rules of Civil Procedure do not foreclose collaboration in
discovery"); Patterson v. Ford Motor Co., 85 F.R.D. 152, 154
(D.C. Tex. 1980) ("There is nothing inherently culpable about
sharing information obtained through discovery.").  In fact, such
use across proceedings promotes efficiency and avoids waste.

> All of the Federal Rules are informed by the admonition
> of Rule 1 that they "be construed to secure the just,
> speedy, and inexpensive determination of every action."
> Acting consistent with this purpose, a number of courts
> have rejected requests to limit the use of discovery to
> the litigation in which it is initially obtained.

Cipollone v. Liggett Group, Inc., supra, 113 F.R.D. at 91.  See
also United States v. Hooker Chems. & Plastics Corp., 90 F.R.D.

---

[8](...continued)
the purpose of exploiting the liberal discovery devices available
in federal civil actions"); Wilk v. Am. Med. Ass'n, 635 F.2d
1295, 1300 (7th Cir. 1980) ("federal civil discovery may not be
used merely to subvert limitations on discovery in another
proceeding"); Cipollone v. Liggett Group, Inc., 113 F.R.D. at 91
(D.N.J. 1986) ("the Federal Rules do not foreclose the
collaborative use of discovery" as long as "the initial
litigation has not itself been instituted in bad faith for the
purpose of obtaining documents for other actions").  There is no
indication that such bad faith is present here.

24

421, 426 (W.D.N.Y. 1981) ("Use of the discovery fruits disclosed in one lawsuit in connection with other litigation, and even in collaboration among plaintiffs' attorneys, comes squarely within the purposes of the Federal Rules of Civil Procedure. . . . Such cooperation among litigants promotes the speedy and inexpensive determination of every action."); Patterson v. Ford Motor Co., supra, 85 F.R.D. at 154 ("The availability of the discovery information [to counsel in related proceedings] may reduce time and money which must be expended in similar proceedings, and may allow for effective, speedy, and efficient representation."); Williams v. Johnson & Johnson, 50 F.R.D. 31, 32 (S.D.N.Y. 1970) (Because the collaborative use of discovery material across related litigation "comes squarely within the aims laid out in the first and fundamental rule of the Federal Rules of Civil Procedure . . . there is no merit to the all-encompassing contention that the fruits of discovery in one case are to be used in that case only.").

However, it is still within the Court's discretion to limit such secondary use of discovery through a protective order. See Sperry Rand Corp. v. Rothlein, 288 F.2d 245, 246, 249 (2d Cir. 1961) (finding "order entered by the district court enjoin[ing] the plaintiff from making any use whatsoever, in any proceeding other than the one pending in [that district court], of information and evidence disclosed by the defendants in the

course of discovery proceedings in the pending case" was within
the district court's discretion); <u>Dove v. Atl. Capital Corp.</u>,
<u>supra</u>, 963 F.2d at 20 (opining that protective order in <u>Sperry</u>,
though not required, was within the district court's discretion);
<u>Milsen Co. v. Southland Corp.</u>, No. 71 C 575, 1972 WL 536 at *1
(N.D. Ill. Feb. 22, 1972) (finding sufficient good cause for the
entry of a protective order under Fed.R.Civ.P 26(c) limiting use
of discovery to the instant litigation where plaintiffs' counsel
stated she intended to reveal the produced material to counsel
for other plaintiffs with actions against the same defendants);
<u>see also</u> <u>Crabtree v. Hayden, Stone Inc.</u>, 43 F.R.D. 281, 283
(S.D.N.Y. 1967) (Mansfield, D.J.) ("the purpose of the pre-trial
discovery rules, including Rule 34, is to enable the parties to
prepare for trial with respect to their own bona fide existing
claims, not to determine whether third parties may have similar
claims"). <u>But see</u> <u>Patterson v. Ford Motor Co.</u>, <u>supra</u>, 85 F.R.D.
at 154 ("Unless it can be shown that the discovering party is
exploiting the instant litigation solely to assist litigation in
a foreign forum, federal courts allow full use of the information
in other forums."); <u>accord</u> <u>Johnson Foils Inc. v. Huyck Corp.</u>, 61
F.R.D. 405, 410 (N.D.N.Y. 1973).  A protective order may be
particularly appropriate when the material at issue is private or
potentially embarrassing, as is the case here.

Accordingly, and consistent with the limited reach of my March 14, 2008 Order, I will permit plaintiffs and their counsel to use the personnel files produced in this action in other actions they have brought or may bring in the future against Gristede's, but only to the extent that the files would also be discoverable in such other litigations.

Further, any use of the files by plaintiffs' counsel in a secondary action will be subject to the confidentiality protections set forth in this protective order, unless the Court issues a different protective order in such action, or the parties enter into a stipulated confidentiality agreement with regard to such action -- in which event the use of the personnel files will instead be subject to that order or agreement.

          e.  <u>Summary</u>

I find that the conflicting interests are appropriately balanced here by a protective order that:  (1) permits designation of the complete contents of the personnel files as confidential; (2) provides that the personnel files may be disclosed to the Court, counsel and their employees and parties in this action, as well as witnesses, experts and consultants as reasonably necessary to litigate the case; (3) provides that the personnel files may also be disclosed to individuals with information relevant to other employment actions against Gristede's in

which plaintiffs' counsel is involved to the extent the material would be otherwise discoverable in such other litigation; (4) permits disclosure of information contained in the files to the media only if (a) it is from the named plaintiffs' personnel files, or (b) the information is disclosed in such a way that it cannot be identified with any particular individual or individuals; (5) requires that plaintiffs' counsel inform any individual viewing the documents of their confidential status and (6) applies to all employee personnel files, whether previously produced or produced in the future.

IV.  Conclusion

      Accordingly, for all the foregoing reasons, defendants' motion for entry of a protective order is granted.  An order implementing the foregoing conclusions follows below.

V.  Protective Order

Based upon the foregoing it is hereby ORDERED that:

      1.  All contents of the personnel files of current and former Gristede's employees (other than the named plaintiffs) produced at any time by Gristede's to plaintiffs in this matter (the "Confidential Material") shall be kept strictly confidential except to the extent that their limited disclosure is permitted by the terms of this Protective

Order.  Such documents shall be stamped "CONFIDENTIAL" to confirm that they are subject to the protection of this Protective Order.  This Order does not designate as confidential any documents other than the contents of the personnel files.

2.  The Confidential Material shall be held in confidence and none of it shall be shown, revealed, discussed or disclosed with or to any person or entity other than:

> a.  the Court in this action;

> b.  counsel for any party retained in or working on the prosecution, defense, or settlement of this action;

> c.  employees of counsel and persons assigned to assist counsel in the prosecution, defense, or settlement of this action;

> d.   individual parties, including the plaintiffs (and/or class members, following the certification of any class), and any director, officer or employee of any party to this action, to the extent deemed necessary by counsel for the prosecution, defense or settlement of this action, subject to Paragraph 3 of this Order;

> e.  witnesses, experts, and consultants, but only to the extent reasonably necessary for the prosecution,

defense or settlement of this action, subject to Paragraph 3 of this Order; and

f.  persons whom counsel believes have information relevant to other employment actions against Gristede's in which plaintiffs' counsel is also involved, but only to the extent that the personnel files shared would also be discoverable in such other actions, and subject to Paragraph 3 of this Order.  In the event that the Court enters a protective order in the related action or the parties stipulate to a confidentiality agreement with regard to that action, and such order or agreement includes the Confidential Material within its scope, the Confidential Material shall be subject to that order or agreement rather than this Order.

3.  Any Confidential Material submitted to or filed with this Court pursuant to the provisions of the preceding paragraph 2(a) shall be submitted or filed under seal.

4.  Prior to the disclosure of any Confidential Material to any individual pursuant to the provisions of the preceding paragraphs 2(d), 2(e) or 2(f), counsel agrees to specifically inform each individual reviewing Confidential Material that it must be kept strictly confidential pursuant to this Order.

5.   With the exception of material pertaining to the named plaintiffs in this action, the Confidential Material may only be revealed, disclosed or discussed to or with the media to the extent that the information is disclosed in a manner that precludes its identification with any particular individual or individuals.

6.   The inadvertent or unintentional disclosure by any party of Confidential Material, regardless of whether the information was so designated at the time of the disclosure, shall not be deemed a waiver in whole or in part of a party's claim of confidentiality, either as to the specific information disclosed or as to any other information dis-closed or as to any other information related to the same or related subject matter.

7.   Nothing contained in this Protective Order shall affect or restrict the rights of any party with respect to its own lawfully obtained documents.

8.   Upon final termination of this action, defendants may request the return or destruction of all Confidential Material, and all copies thereof made by or on behalf of plaintiffs, and plaintiffs shall comply with such request unless otherwise ordered by the Court.  Notwithstanding this provision, counsel is permitted to retain an archival copy of all pleadings, motion papers, transcripts, legal memo-

31

randa, correspondence or attorney work product, even if such
materials contain Confidential Material.  Any such archival
copies that contain or constitute Confidential Material
remain subject to this Protective Order.  Also notwithstand-
ing this provision, counsel is entitled to retain any Confi-
dential Material for use in other proceedings pursuant to
Paragraph 2(f) of this Order, even after the conclusion of
this action, although any such materials remain subject to
this Protective Order to the extent directed by Paragraph
2(f).

9.  The provisions of this Order are without prejudice
to any application by any party at any time, on notice, for
a modification or dissolution of or relief from this Order
or any provision thereof.

10.  The foregoing is without prejudice to the right of
any party to apply to the Court for any further Protective
Order relating to any confidential documents or information;
or to apply to the Court for an order compelling production
of documents; or for the modification or relaxation of this
Order.

11.  Defendants are directed to produce any personnel
files they have not yet produced from the three largest

stores going back to 1999 within fifteen days of the date of
this Opinion and Order.

Dated:  New York, New York
        March 30, 2010

                                    SO ORDERED

                                    HENRY PITMAN

Copies transmitted to:

Adam T. Klein, Esq.
Justin M. Swartz, Esq.
Lewis M. Steel, Esq.
Cara E. Greene, Esq.
Outten & Golden, LLP
3 Park Avenue, 29th Floor
New York, New York 10016

Kevin J. Nash, Esq.
Joseph Ted Donovan, Esq.
Finkel Goldstein Rosenbloom & Nash LLP
26 Broadway, Ste. 711
New York, New York 10004

Michael J. Puma, Esq.
Morgan, Lewis and Bockius LLP
1701 Market Street
Philadelphia, Pennsylvania 19103

Amber L. Kagan, Esq.
Morgan, Lewis and Bockius LLP
101 Park Avenue
New York, New York 10178