OUTTEN & GOLDEN LLP
Adam T. Klein
Lewis M. Steel
Rachel Bien
Delyanne D. Barros
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
―――――――――――――――――――――――――――――

SUSAN DULING, MARGARET ANDERSON, and
LAKEYA SEWER, on behalf of themselves and all
others similarly situated,

                              Plaintiffs,

                -against-

GRISTEDE'S OPERATING CORP.; RED APPLE
GROUP, INC., D/B/A/ GRISTEDE'S; GRISTEDE'S
FOOD INC.; GRISTEDE'S DELIVERY SERVICE,
INC.; GRISTEDE'S FOODS NY, INC.; GRISTEDE'S
NY, LLC; NAMDOR, INC.; and JOHN CATSIMATIDIS,

                              Defendants.

―――――――――――――――――――――――――――――

**06 Civ. 10197 (LTS)(HBP)**

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, CONDITIONAL
## CERTIFICATION OF THE SETTLEMENT CLASS, APPOINTMENT OF PLAINTIFFS'
## COUNSEL AS CLASS COUNSEL, AND APPROVAL OF THE PROPOSED NOTICE OF
## SETTLEMENT AND CLASS ACTION SETTLEMENT PROCEDURE

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

I.    Factual and Procedural Background ................................................................. 1

II.   Summary of the Settlement Terms ................................................................... 3

      A.   The Settlement Fund ................................................................................ 3

      B.   Injunctive Relief ...................................................................................... 4

      C.   Release ..................................................................................................... 6

      D.   Eligible Employees .................................................................................. 6

      E.   Claims Process ......................................................................................... 6

      F.   Allocation Formula .................................................................................. 7

      G.   Attorneys' Fees and Litigation Costs ...................................................... 8

      H.   Service Award & Individual Awards ....................................................... 8

      I.   Settlement Claims Administrator ............................................................. 9

III.  Class Action Settlement Procedure ................................................................. 9

ARGUMENT ......................................................................................................... 10

I.    Preliminary Approval of the Settlement Is Appropriate ............................... 10

      A.   The Settlement Is Fair, Reasonable and Adequate ............................... 12

            1.   Litigation Through Trial Would Be Complex, Costly, and Long
(*Grinnell* Factor 1). ................................................................... 12

            2.   The Reaction to the Settlement Has Been Positive (*Grinnell* Factor
2) .................................................................................................. 13

            3.   Discovery Has Advanced Far Enough to Allow the Parties to
Resolve the Case Responsibly (*Grinnell* Factor 3) .................... 13

            4.   Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell*
Factors 4 and 5) ........................................................................... 14

            5.   Maintaining the Class Through Trial Would Not Be Simple
(*Grinnell* Factor 6) ..................................................................... 15

6.    Defendants' Ability to Withstand a Greater Judgment Is Not Clear (*Grinnell* Factor 7) ....................................................................... 15

7.    The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) ............................................................................... 16

II.    Conditional Certification of the Settlement Class Is Appropriate. ............................... 17

A.    Numerosity ................................................................................................ 19

B.    Commonality ............................................................................................. 19

C.    Typicality .................................................................................................. 20

D.    Adequacy of the Named Plaintiffs ........................................................... 20

E.    Certification Is Proper Under Rule 23(b)(3) ............................................ 21

1.    Common Questions Predominate .................................................. 21

2.    A Class Action Is a Superior Mechanism ..................................... 22

III.    Plaintiffs' Counsel Should Be Appointed as Class Counsel ........................................ 24

IV.    The Proposed Notice and Claim Form Is Appropriate ................................................. 25

CONCLUSION ............................................................................................................................ 26

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amchem Prods., Inc. v. Windsor,*
 521 U.S. 591 (1997)...........................................................................................21, 23

*In re Austrian & German Bank Holocaust Litig.,*
 80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236
 F.3d 78 (2d Cir. 2001)........................................................................................13, 14

*by Goldberg v. Integrated Res., Inc.,*
 209 F.3d 43 (2d Cir. 2000)........................................................................................12

*by Miles v. Merrill Lynch & Co.* (*In re Initial Pub. Offering Sec. Litig.*),
 471 F.3d 24 (2d Cir. 2006)........................................................................................21

*Cagan v. Anchor Sav. Bank FSB,*
 No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990).................................16

*Capsolas v. Pasta Resources, Inc.,*
 No. 10-5595, 2012 WL 1656920 (S.D.N.Y. May 9, 2012) .............................11, 23

*City of Detroit v. Grinnell Corp.,*
 495 F.2d 448 (2d Cir. 1974)............................................................................. passim

*Consol. Rail Corp. v. Town of Hyde Park,*
 47 F.3d 473 (2d Cir. 1995)........................................................................................18

*Danieli v. IBM,*
 No. 08 Civ. 3688, 2009 WL 6583144 (S.D.N.Y. Nov. 16, 2009) ...........................11

*Duling v. Gristede's Operating Corp.,*
 267 F.R.D. 86 (S.D.N.Y. 2010) ........................................................................ passim

*Dziennik v. Sealift, Inc.,*
 No. 05 Civ. 4659, 2007 WL 1580080 (E.D.N.Y. May 29, 2007)............................21

*Easterling v. Conn. Dep't of Corr.,*
 No. 08 Civ. 826, 2011 WL 5864829 (D. Conn. Nov. 22, 2011).............................22

*Easterling v. Connecticut, Dept. of Corr.,*
 265 F.R.D. 45 (D. Conn. 2010), *modified sub nom. Easterling v. Connecticut Dept. of
 Corr.*, No. 3:08 Civ. 826, 2011 WL 5864829 (D. Conn. Nov. 22, 2011)................24

*Frank v. Eastman Kodak Co.,*
 228 F.R.D. 174 (W.D.N.Y. 2005)..................................................................... passim

iv

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.,*
    55 F.3d 768 (3d Cir. 1995).............................................................................17

*Gen. Tel. Co. of Sw. v. Falcon,*
    457 U.S. 147 (1982).....................................................................................18

*Gilliam v. Addicts Rehab. Ctr. Fund,*
    No. 05-3452, 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008)...........................17

*Green v. Wolf Corp.,*
    406 F.2d 291 (2d Cir. 1968)..........................................................................22

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) .......................................................................23

*In re Ira Haupt & Co.,*
    304 F. Supp. 917 (S.D.N.Y. 1969).................................................................14

*Kamean v. Local 363, Int'l Bhd. of Teamsters,*
    109 F.R.D. 391 (S.D.N.Y. 1986) ...................................................................19

*Khait v. Whirlpool Corp.,*
    No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010)....................8

*Marisol A. v. Giuliani,*
    126 F.3d 372 (2d Cir. 1997)..........................................................................20

*Maywalt v. Parker & Parsley Petroleum Co.,*
    67 F.3d 1072 (2d Cir. 1998)..........................................................................10

*Mayer v. Driver Solutions, Inc.,*
    No. 10 Civ. 1939, 2012 WL 453234 (E.D. Pa. Feb. 13, 2012)......................23

*McBean v. City of New York,*
    228 F.R.D. 487 (S.D.N.Y. 2005) ...................................................................22

*Officers for Justice v. Civil Serv. Comm'n of City and Cty. of San Francisco,*
    688 F.2d 615 (E.D. Tex. 1982) ......................................................................16

*In re Painewebber Ltd. P'ships Litig.,*
    171 F.R.D. 104 (S.D.N.Y. 1997) ...................................................................14

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.,*
    237 F.R.D. 26 (E.D.N.Y. 2006)......................................................................18

*Reyes v. Buddha-Bar NYC,*
    No. 08-02494, 2009 WL 5841177 (S.D.N.Y. May 28, 2009) .........................9

*Robidoux v. Celani,*
    987 F.2d 931 (2d Cir. 1993)................................................................................20

*Rossini v. Ogilvy & Mather, Inc.,*
    798 F.2d 590 (2d Cir. 1986)................................................................................21

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.,*
    659 F.3d 234 (2d Cir. 2011)................................................................................15

*In re State Street Bank & Trust Co. ERISA Litig.,*
    No. 08 Civ. 0265, 2009 WL 3458705 (S.D.N.Y. Oct. 28, 2009) .............................3

*Torres v. Gristede's Operating Corp.,*
    Nos. 04 Civ. 3316, 08 Civ. 8531, 08 Civ. 9627, 2010 WL 2572937 (S.D.N.Y. June 1,
    2010) .................................................................................................................10

*Toure v. Cent. Parking Sys. of N.Y.,*
    No. 05 Civ. 5237, 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007)..........................20

*In re Traffic Exec. Ass'n,*
    627 F.2d 631 (2d Cir. 1980)................................................................................11

*United States v. City of New York,*
    276 F.R.D. 22 (E.D.N.Y. 2011)...........................................................................22

*Velez v. Majik Cleaning Serv., Inc.,*
    No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007)...........................14

*In re Visa Check/MasterMoney Antitrust Litig.,*
    280 F.3d 124 (2d Cir. 2001)...........................................................................21, 23

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011)........................................................................................15

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
    396 F.3d 96 (2d Cir. 2005)..............................................................................10, 11

*In re Warfarin Sodium Antitrust Litig.,*
    391 F.3d 516 (3d Cir. 2004)................................................................................13

*Willix v. Healthfirst, Inc.,*
    No. 07-1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ...................................11

**STATUTES**

Family & Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* ............................................2

**RULES**

Fed. R. Civ. P. 23 ............................................................................................................. passim

**OTHER AUTHORITIES**

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*") §§ 11.22
    (4th ed. 2002) .........................................................................................9, 10, 11, 17

**<u>INTRODUCTION</u>**

Subject to Court approval, the parties have settled Plaintiffs' claims on a classwide basis for the significant monetary relief of $1,450,000 and injunctive relief.  The proposed settlement satisfies all of the criteria for preliminary approval under federal law.  With this motion, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the parties' Term Sheet, attached as Exhibit B to the Declaration of Rachel Bien in Support of Plaintiffs' Motion for Preliminary Approval of Settlement ("Bien Decl.");[1] (2) approve the proposed Notice of Class Action Settlement ("Notice"), attached as Exhibit C to the Bien Decl., and Claim Form, attached as Exhibit D to the Bien Decl., and direct their distributions; (3) conditionally certify the proposed class for settlement purposes and appoint Plaintiffs' counsel as class counsel; and (4) approve the proposed schedule for final settlement approval.

## I.    Factual and Procedural Background

Plaintiffs Susan Duling, Margaret Anderson[2], and Lakeya Sewer are former cashiers at Gristede's.  On September 2, 2005, Margaret Anderson filed a timely charge with the Equal Employment Opportunity Commission, asserting individual and class-wide gender discrimination claims and tolling all Title VII claims as of that date.  Bien Decl. ¶10.  On September 26, 2006, the EEOC issued a Notice of Right to Sue to Ms. Anderson.  *Id.*  On October 23, 2006, Plaintiff Anderson filed a class action complaint, alleging disparate treatment and disparate impact claims against the corporate Defendants under Title VII, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").  *Id.* ¶11.  She subsequently filed two amended complaints, adding Plaintiffs

---

[1] All Exhibits are attached to the Bien Decl.

[2] Prior to executing the term sheet, Ms. Anderson passed away.  Her mother, Ruby Anderson, is currently in the process of applying for appointment as the head of Ms. Anderson's estate.

Duling and Sewer and claims against Gristede's owner and President John Catsimatidis.  *Id.*  ¶12.
A copy of the Second Amended Complaint is attached as **Exhibit A**.

The complaint alleges that Gristede's violated Title VII, the NYSHRL, and the NYCHRL
by steering women who had applied for work in one of its approximately 40 New York
supermarkets into part-time, dead-end cashier jobs – with little or no prospect for transfers or
promotions into management-track positions.  *See* Ex. A (Second Am. Compl.) ¶¶ 111-131.
Plaintiff Sewer also brought an individual claim of discrimination based on her gender and
pregnancy and a claim for interference with her rights under the Family & Medical Leave Act,
29 U.S.C. §§ 2601 *et seq*.  *See* Ex. A (Second Am. Compl.) ¶¶ 132-138.

Over the next five years, the parties engaged in significant discovery, taking and
defending approximately 27 depositions, including those of class members, managerial-level
employees, both parties' experts, and Catsimatidis.  Bien Decl. ¶14.  Defendants also produced
and Plaintiffs reviewed over 31,500 pages of documents.  *Id.*

 After almost two years of discovery and significant discovery motion practice, Plaintiffs
moved for class certification on January 30, 2009.   ECF No. 58.  On March 8, 2010, the Court
certified the following class under Fed. R. Civ. P. 23(b)(2): all current and former female
Gristede's employees who worked for Gristede's at any time between November 2, 2004 and the
date of final judgment.  *See* ECF No. 127.  The Court also denied Gristede's motions to strike
Plaintiffs' expert reports submitted by Drs. David Crawford and William Bielby, holding that the
reports were admissible under *Daubert*.  *Id.*

On September 14, 2010, the parties engaged in settlement discussions facilitated by a
mediator, Hunter Hughes, Esq. of Rogers & Hardin LLP.  The parties were unable to reach an
agreement and litigation resumed.  Bien Decl. ¶16.

The parties engaged in additional discovery, including seven depositions of class members and managerial-level employees. *Id.* ¶16.

In early 2012, the parties renewed settlement discussions. *Id.* ¶17. Over the next several months, the parties negotiated the material terms of a settlement and executed the Term Sheet. *Id.* ¶¶17, 18; Ex. B (Term Sheet). After the parties agreed to the term sheet, they have continued to negotiate the significantly less critical mechanics of the settlement's injunctive relief provisions. *Id.* ¶19.

Although the parties are still in the process of negotiating a final settlement agreement incorporating all terms, Plaintiffs do not wish to delay the process for settlement approval and therefore seek the Court's preliminary approval of the Term Sheet, conditional certification of the settlement class, and the approval of their proposed settlement notice to the class. *See In re State Street Bank & Trust Co. ERISA Litig.,* No. 08 Civ. 0265, 2009 WL 3458705, at *2 (S.D.N.Y. Oct. 28, 2009) (granting preliminary approval of an $89.75 million settlement based on the parties' execution of a binding term sheet settling the putative class claims). If the parties are unable to resolve these mechanics as the settlement process goes forward with regard to giving notice to the class and scheduling the fairness hearing, Class counsel will ask the Court to refer this matter to Magistrate Judge Henry Pitman or a Special Master to complete the process as some of the class members have now waited years for any monetary award resulting from the case. Bien Decl. ¶19.

## II.    Summary of the Settlement Terms

### A.    The Settlement Fund

Gristede's has agreed to create a Qualified Settlement Fund of one million four hundred and fifty thousand dollars ($1,450,000) ("the Fund"). Ex. B (Term Sheet) ¶ 1. $500,000 will be

in the form of gift certificates or coupons ("Coupons") which shall be redeemable at all Gristede's stores in New York and may be used to purchase all products sold in such stores.  *Id.* ¶ 2.  The Coupons shall be available for all purposes, shall expire two years after they are issued, and shall be transferable to all family members and domestic partners.  *Id.*  Only settlement class members who reside in New York City shall be compensated in part with Coupons.  *Id.*  The Coupons shall be delivered to the Settlement Claims Administrator who shall maintain them in a secure location until they are distributed to the class members.  *Id.* ¶ 3.

With the exception of the amount for the employer's share of taxes and the fees for the Settlement Claims Administrator and a Compliance Monitor, Gristede's shall deliver the coupon and monetary portion of the Settlement Fund within 30 days of the final approval of the settlement, which shall be no earlier than January 1, 2013.  *Id.* ¶ 3.

The Settlement Fund shall cover individual settlement payments of $50,000 to Jenneil Adams-Hargrett[3] and $20,000 to Lakeya Sewer to settle their individual claims.  *Id.* ¶ 4(a).  The Settlement Fund will also cover any service awards approved by the Court, the Claims Administrator's fees, and the employer's share of employment taxes, including federal and state payroll taxes and the employer's share of FICA tax.  *Id.* ¶¶ 4(b)-(d).  Finally, the Settlement Fund will cover the fees for the Compliance Monitor (APT Metrics) for monitoring the four-year injunctive relief process per the Settlement Agreement.  *Id.* ¶ 4(e).

### B.    Injunctive Relief

In addition to monetary relief, Defendants have agreed to substantial injunctive relief for a term of four (4) years.  *Id.* ¶ 9.  Such relief shall include, but will not be limited to:

---

[3] Plaintiff Jenneil Adams-Hargrett filed an individual complaint on January 11, 2012 alleging gender and pregnancy discrimination by Defendants in Bronx Supreme Court, No. 300262-2012. Ms. Adams-Hargrett is a class member in this case.

- measures to prohibit the steering of female employees into certain positions, including the cashier position;

- hiring and promotion goals for female employees and applicants;

- the posting of all job openings and job requirements, including with respect to management positions;

- implementation of job descriptions that do not discriminate in purpose or effect against female employees;

- appropriate management and cross-training programs and a commitment to make good faith efforts to maximize female participation in all such programs with the goal of having at least a 50% female participation rate; appropriate human resources oversight of Gristede's hiring and promotion policies and practices;

- a monitoring mechanism with respect to the above goals and obligations; and

-  a dispute resolution mechanism to address and resolve any disputes that arise between the parties during the term of the Agreement.

*Id.*

For the purposes of complying with the terms of the injunctive relief, the parties have appointed a Compliance Monitor, Kathleen Lundquist of APT Metrics, whose duties and responsibilities shall be enumerated in the final settlement agreement.  *Id.* ¶¶ 4(e), 9.  In addition to the Settlement Fund and attorneys' fees and costs, Defendants shall be responsible for up to $10,000 per year for two years (a total of $20,000) for any costs associated with the efforts of the Compliance Monitor.  *Id.* ¶ 9.

5

### C.    Release

Class members who do not opt out of the settlement will release all claims that were brought or which could have been brought in this litigation based on the same facts and circumstances as the claims alleged in this litigation up through the date on which the Court grants preliminary approval of the settlement. *Id*. ¶ 11.

### D.    Eligible Employees

The proposed damages settlement class pursuant to Fed. R. Civ. P. 23(b)(3) consists of the following:

> All women who worked for Gristede's for at least 90 days in one or more of its stores in New York between November 2, 2004 and the date on which the Court grants preliminary approval of the settlement and who do not opt-out ("Settlement Class").

Ex. B. (Term Sheet) ¶ 7.

The Court has already certified the injunctive class pursuant to Fed. R. Civ. P. 23(b)(2) as:

> All current and former female Gristede's employees who worked for Gristede's at any time between November 2, 2004 and the date of final judgment.

*See Duling v. Gristede's Operating Corp.*, 267 F.R.D. 86, 100 (S.D.N.Y. 2010).

### E.    Claims Process

The settlement provides for a claims process under which class members will have 60 days to return a two-page claim form in order to be eligible to obtain a monetary recovery.  The claim form asks class members to self-identify by gender and answer questions regarding their employment dates.  Ex. D (Claim Form).  Class members will be eligible to share in the monetary recovery if they: (1) self-identify as female and (2) were employed in a New York-based Gristede's grocery store for at least 90 days between November 2, 2004 and the present.

The claims administrator will be responsible for reviewing claim forms that class members return for completeness and eligibility.  If a class member submits an incomplete claim form, the claims administrator will send a letter to the class member explaining the reason that the submitted Claim Form is incomplete and giving the class member thirty days to cure the omission. Class Counsel may follow up with the class member to try and assist him or her in completing the information.

The claims administrator will cross-check the employment dates self-reported in the Claim Form with the information contained in Defendants' records.  Where a discrepancy is found between the self-reported information and that which exists in Defendants' records, the claims administrator will inform Class Counsel within 2 business days of identifying the discrepancy.  Class Counsel may then attempt to verify the information, by interviewing the claimant and/or requesting that the claimant produce evidence supporting the information he or she self-reported.  Class Counsel will then determine whether the claimant is approved as a class member.

Class Counsel may challenge a claimant's eligibility to recover where they have a good faith belief that a claimant's submission may be invalid.  Class Counsel may also retain the right to challenge the claims administrator's determinations regarding approval or denial of each Claim Form and the amount the claims administrator proposes to pay to each Claimant.

**F.    Allocation Formula**

Class members who do not opt out will be paid pursuant to an allocation formula based on, among other things, class members' weeks of service at Gristede's.  Ex. B (Term Sheet) ¶ 10. Settlement payments classified as wages will be taxed accordingly.  *Id*. ¶ 4(d).  To the maximum extent permitted by the law, settlement payments will be classified as non-wages.  *Id.*

### G.     Attorneys' Fees and Litigation Costs

Defendants agreed to pay Plaintiffs' counsel's attorneys' fees and costs as negotiated and agreed to by the parties or any fees and costs awarded by the Court.  *Id*. ¶ 1.  Plaintiffs' counsel will file a motion for approval of fees and costs when they move for final approval of the settlement.  *See* Fed. R. Civ. P. 23(h) & 54(d)(2).

The Term Sheet is not conditioned on the award of attorneys' fees and costs.  Ex. B (Term Sheet) ¶¶ 1, 3.  The Court need not decide the attorneys' fees and costs issue now.

### H.     Service Award & Individual Awards

In addition to their individual awards under the allocation formula, Plaintiffs Susan Duling, Margaret Anderson, Lakeya Sewer will apply for a reasonable service payment in recognition of the services they rendered on behalf of the class ("Service Award").  Ex. B (Term Sheet) ¶ 4(b).  Their services included, but were not limited to, informing counsel of the facts initially and as the case progressed, providing counsel with relevant documents in their possession, preparing for and attending their depositions, assisting counsel prepare for the mediation and reviewing and commenting on the terms of the settlement.  Bien Decl. ¶24.

Such service awards are "common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation."  *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010).  Like the application for attorneys' fees, the Term Sheet is not conditioned on the award of  Service Awards.  Ex. B (Term Sheet) ¶ 4(b).  Plaintiffs will file a motion for approval of Service Awards with their motion for final approval of the settlement.  Bien Decl. ¶25.

I.        **Settlement Claims Administrator**

The parties will jointly select a Settlement Claims Administrator.  Ex. B. (Term Sheet)

¶3.  The claims administrator's fees will be paid from the Fund.  *Id*. ¶ 4(c).

III.   **Class Action Settlement Procedure**

Courts have established a defined procedure and specific criteria for settlement approval

in class action settlements that include three distinct steps:

1.        Preliminary approval of the proposed settlement after submission to the Court of a
written motion for preliminary approval and certification of the settlement class;

2.        Dissemination of mailed and/or published notice of settlement to all affected class
members; and

3.        A final settlement approval hearing at which class members may be heard
regarding the settlement, and at which argument concerning the fairness,
adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*

("*Newberg*") §§ 11.22 *et seq.* (4th ed. 2002); *Reyes v. Buddha-Bar NYC,* No. 08-02494, 2009

WL 5841177, at *1-2 (S.D.N.Y. May 28, 2009).  This process safeguards class members'

procedural due process rights and enables the Court to fulfill its role as the guardian of class

interests.  With this motion, Plaintiffs request that the Court take the first step – granting

preliminary approval of the Term Sheet, conditionally certifying the Settlement Class, appointing

Plaintiffs' counsel as Class Counsel, and approving the proposed Notice and Claim Form and

authorizing the claims administrator to send it.  Plaintiffs respectfully submit for the Court's

approval the following schedule for final resolution of this matter:

1.        Within 10 days of the Court's grant of preliminary approval, the claims
administrator will mail the Notice and Claim Form to class members.

2.        Class members will have 30 days after the date the Notice is mailed to opt out of
or object to the settlement ("Notice Period").   Class members will have 60 days
to return a Claim Form after the date the Notice is mailed.

3.      A final fairness hearing will be held as soon as is convenient for the Court.

4.      Plaintiffs will file a Motion for Final Settlement Approval no later than 14 days before the fairness hearing.

5.      After the fairness hearing, if the Court grants Plaintiffs' Motion for Final Settlement Approval, the Court will issue a Final Order and Judgment.  If no party appeals the Court's Final Order and Judgment, the "Effective Date" of the settlement will be 30 days after the Court enters its Final Order and Judgment.

6.      If an individual or party appeals the Court's Final Order and Judgment, the "Effective Date" of Settlement shall be the day after all appeals are finally resolved in favor of final approval and the time for any further appeal, rehearing, or reconsideration has expired.

7.      The Settlement Claims Administrator will disburse settlement checks to class members, Court-approved attorneys' fees and costs, and Court-approved service awards within 21 days of (a) receipt by the Settlement Class Administrator of a final list approved by Class Counsel, including dates of employment; or (b) the Final Approval Date, whichever is later.

## ARGUMENT

### I.      Preliminary Approval of the Settlement Is Appropriate

The law favors compromise and settlement of class action suits.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation marks omitted); *Newberg* § 11.25 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.")  The approval of a proposed class action settlement is a matter of discretion for the trial court.  *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998).  In exercising their discretion, courts should give "proper deference to the private consensual decision of the parties."  *Torres v. Gristede's Operating Corp.*, Nos. 04 Civ. 3316, 08 Civ. 8531, 08 Civ. 9627, 2010 WL 2572937, at *2 (S.D.N.Y. June 1, 2010) (internal quotation marks omitted).

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed

settlement on the basis of written submissions and an informal presentation by the settling

parties. *Newberg* § 11.25. The Court need only find that there is "'probable cause' to submit the

[settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec.*

*Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980); *see Newberg* § 11.25 ("If the preliminary evaluation of

the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall

within the range of possible approval," the court should permit notice of the settlement to be sent

to class members); *Danieli v. IBM*, No. 08 Civ. 3688, 2009 WL 6583144, at *4 (S.D.N.Y. Nov.

16, 2009) (granting preliminary approval where the settlement "ha[d] no obvious defects" and

the proposed allocation plan was "rationally related to the relative strengths and weaknesses of

the respective claims asserted").

"Fairness is determined upon review of both the terms of the settlement agreement and

the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D.

174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may

attach to a class settlement reached in arm's-length negotiations between experienced, capable

counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation

marks omitted). "'Absent fraud or collusion, [courts] should be hesitant to substitute [their]

judgment for that of the parties who negotiated the settlement.'" *Willix v. Healthfirst, Inc.*, No.

07-1143, 2011 WL 754862, *2 (E.D.N.Y. Feb. 18, 2011) (quoting *In re EVCI Career Colls.*

*Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27,

2007)); *see also Capsolas v. Pasta Resources, Inc.*, No. 10-5595, 2012 WL 1656920, at *1

(S.D.N.Y. May 9, 2012).

The first step in the settlement process simply allows notice to issue to the class and for class members to object or opt out of the settlement.  After the notice period, the Court will be able to evaluate the settlement with the benefit of the class members' input.

**A.    The Settlement Is Fair, Reasonable and Adequate.**

In evaluating a class action settlement, courts in the Second Circuit consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberg v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  Although the Court need not evaluate the *Grinnell* factors in order to conduct its initial evaluation of the settlement, it may be useful for the Court to consider the criteria on which it will ultimately judge the settlement.

The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *Grinnell*, 495 F.2d at 463.  All of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement, and certainly in favor of preliminary approval.

1. Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1).

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay and ensure a speedy, risk-free recovery for the class.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of

12

other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). This case is no exception, with approximately 876 class members and claims under federal, state and city law. Bien Decl. ¶22.

The parties have completed discovery and the next step would be for each party to move for summary judgment. Preparing such motions would be timely and costly as they would require the parties to review over 27 transcripts of depositions and thousands of documents and obtain supporting affidavits from class members. In addition, any judgment related to the summary judgment motions may be appealed, extending the duration of the litigation. The settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of preliminary approval.

### 2. The Reaction to the Settlement Has Been Positive (*Grinnell* Factor 2).

After notice issues and class members have had an opportunity to be heard, the Court can more fully analyze this factor. At this point, the Named Plaintiffs have indicated their support for the settlement by signing the Term Sheet.

### 3. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3).

The parties have completed enough discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (internal quotation marks omitted). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (internal quotation marks omitted). The parties' discovery here meets this

13

standard.  As discussed above, the parties engaged in significant discovery, taking and defending approximately 27 depositions, including those of class members, managerial-level employees, both parties' experts, and the owner John Catsimatidis.  Bien Decl. ¶14.  Defendants also produced and Plaintiffs reviewed over 31,500 pages of documents, including electronically stored information, corporate policies and procedures, and personnel files.  *Id.*

Based on these circumstances, the parties were well equipped to evaluate the strengths and weaknesses of the case.  This factor also weighs in favor of preliminary approval.

### 4. Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5).

Although Plaintiffs' case is strong, it is not without risk.  "Litigation inherently involves risks."  *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997).  Indeed, "if settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome."  *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007).  In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177 (internal quotation marks omitted).

A trial on the merits would involve risk as to both liability and damages, particularly with respect to the steering and failure to promote claims because of their fact-intensive nature.  First, Plaintiffs may have difficulty showing that Gristede's personnel policies and procedures were consistently applied.  While Plaintiffs believe that they could ultimately defeat Defendants' defenses and establish liability, this would require significant factual development and favorable

outcomes at trial and on appeal, all of which is inherently uncertain and lengthy.  The proposed

settlement alleviates this uncertainty.

Risk, expense, and delay permeate such a process.  Settlement eliminates this risk,

expense, and delay.  This factor weighs in favor of preliminary approval.

### 5.   Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6).

The risk of obtaining class certification pursuant to Fed. R. Civ. P. 23(b)(3) and

maintaining it through trial is also present.  The Court has not yet certified the Rule 23(b)(3)

class and such a determination would likely be reached only after extensive briefing by both

parties.  Defendants may argue that individual questions preclude class certification, including

whether the relevant policies and procedures regarding hiring were consistently applied in all

forty stores.  There also exists a possibility that the Court would not grant class certification of

the class in light of *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011).  Should the Court

certify the Rule 23(b)(3) class, Defendants would likely later challenge certification and move to

decertify, requiring another round of briefing.  Defendants may also seek permission to file an

interlocutory appeal under Fed. R. Civ. P. 23(f).  *See, e.g.*, *Shahriar v. Smith & Wollensky Rest.

Grp., Inc.*, 659 F.3d 234 (2d Cir. 2011).  Risk, expense, and delay permeate such a process.

Settlement eliminates this risk, expense, and delay.  This factor also favors preliminary approval.

### 6.   Defendants' Ability to Withstand a Greater Judgment Is Not Clear (*Grinnell* Factor 7).

Based on representations that Defendants have made regarding serious financial

contraints, Bien Decl. ¶20, it is not certain that Defendants could withstand a greater judgment.

Even if they could, a "defendant's ability to withstand a greater judgment, standing alone, does

not suggest that the settlement is unfair."  *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian &*

*German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9).  Here, the settlement eliminates the risk of collection because Defendants will deposit the monetary payment within 30 days of the Court's final approval order (but no earlier than January 1, 2013).  Ex. B (Term Sheet) ¶ 3. Accordingly, this factor also favors preliminary approval.

> 7.   The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9).

The $1,450,000 settlement represents a good value given the risks of litigation.  In Plaintiffs' counsel's estimation, the settlement represents a significant percentage of the recovery that Plaintiffs would have achieved if they succeeded on all claims at trial and survived an appeal.  Bien Decl. ¶21.  If approximately 50% of class members submit a valid claim form, each claimant will receive an average of $3,310 before the individual payments and costs outlined in the Term Sheet are deducted.  *Id.*  The payments will vary depending on the length of time each class member has worked for Gristede's within the class period.

Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement is more than reasonable.  "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."  *Grinnell*, 495 F.2d at 455 n.2.  "It is well settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair."  *Officers for Justice v. Civil Serv. Comm'n of City and Cty. of San Francisco*, 688 F.2d 615, 628 (E.D. Tex. 1982); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million").

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

Moreover, when settlement assures immediate payment of substantial amounts to class members, "even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road,'" settlement is reasonable under this factor. *See Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05-3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (quoting *Teachers' Ret. Sys. of Louisiana v. A.C.L.N. Ltd.*, No. 01 Civ. 11814, 2004 WL 2997957, at *5 (S.D.N.Y. May 14, 2004)).

## II.     Conditional Certification of the Settlement Class Is Appropriate.

Plaintiffs respectfully request that the Court conditionally certify the following class pursuant to Fed. R. Civ. P. 23(b)(3) for purposes of effectuating the settlement: all women who worked for Gristede's for at least 90 days in one or more of its stores in New York between November 2, 2004 and the date on which the Court grants preliminary approval of the settlement ("Settlement Class").  Ex. B (Term Sheet) ¶ 7.

The Settlement Class satisfies Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation and at least one of the subsections of Rule 23(b).  *See* 4 *Newberg* § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a

17

class action for the purpose of settlement only.")  Conditional settlement approval, class

certification, and appointment of class counsel have practical purposes, including avoiding the

costs of litigating class status while facilitating a global settlement, ensuring that all class

members are notified of the terms of the proposed settlement, and setting the date and time of the

final approval hearing.  *See In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.*,

55 F.3d 768, 784, 791 (3d Cir. 1995).

Under Rule 23(a), a class action may be maintained if all of the requirements of Rule

23(a) are met, as well as one of the requirements of Rule 23(b).  Rule 23(a) requires that: (1) the

class is so numerous that joinder of all members is impracticable; (2) there are questions of law

or fact common to the class; (3) the claims or defenses of the representative parties are typical of

the claims or defenses of the class; and (4) the representative parties will fairly and adequately

protect the interests of the class.  Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the court to find

that: (1) questions of law or fact common to the members of the class predominate over any

questions affecting only individual members; and that (2) a class action is superior to other

available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P.

23(b)(3).  "In the Second Circuit, 'Rule 23 is given liberal rather than restrictive construction,

and courts are to adopt a standard of flexibility'" in evaluating class certification.  *Reade-Alvarez*

*v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A. v.*

*Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).  This Court has already found that the proposed

class here satisfies Rule 23(a) based on an extensive factual record.  *Duling*, 267 F.R.D. at 96-

100 (proposed class satisfies Rule 23(a) requirements and certifying the class under Rule

23(b)(2)).  Since the Court's grant of class certification on March 8, 2010, there have been no

significant changes to the Class or the claims that they are asserting that would preclude class certification under Rule 23(b)(3).

### A.  Numerosity

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "[N]umerosity is presumed at a level of 40 members . . . ."  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  Here, there are approximately 876 class members.  Bien Decl. ¶22; *Duling*, 267 F.R.D. at 96 (numerosity satisfied by a class of 668 class members).

### B.  Commonality

The proposed class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Although the claims need not be identical, they must share common questions of fact or law.  *Frank*, 228 F.R.D. at 181.  There must be a "unifying thread" among the claims to warrant class certification.  *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986).  Courts construe the commonality requirement liberally.  *Frank*, 228 F.R.D. at 181.

This case involves several common factual and legal issues, including: whether Gristede's steered women who have applied for work in one of its approximately 40 New York supermarkets into part-time, dead-end cashier jobs – with little or no prospect for transfers or promotions into management-track positions and whether Gristede's condoned a well-established culture of systematic discriminatory treatment of female employees which prevented them from obtaining promotions into higher-paying positions.  These alleged discriminatory acts

– involving common operative facts stemming from corporate policies that affected the class members in the same way – are sufficient to meet Rule 23(a)'s commonality factor. *Duling*, 267 F.R.D. at 96 (commonality satisfied by "evidence of steering or channeling practices at the initial hiring stage, lack of hiring and promotion standards having the purpose or effect of protecting against intentional or unintentional sex discrimination, and data showing statistically significant disparities in hiring into job categories and in promotion and resulting compensation rates").

### C.  Typicality

Typicality is also satisfied.  "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182.  Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (quoting *In re Drexel Burnham Lambert Grp.*, 960 F.2d 285, 291 (2d Cir. 1992)) (internal quotation marks omitted).  "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).  Here, Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of class members' claims, including being subject to the same discriminatory hiring and promotion policies. *See Duling*, 267 F.R.D. at 97-98.

### D.  Adequacy of the Named Plaintiffs

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement exists to ensure that the named representatives will have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members." *Toure v.*

*Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (quoting *Penney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)) (internal quotation marks omitted).  "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (quoting *Martens v. Smith Barney Inc.*, 181 F.R.D. 243, 259 (S.D.N.Y. 1998)) (internal quotation marks omitted).  There is no evidence that Plaintiffs' and class members' interests are at odds.  *See Duling*, 267 F.R.D. at 97-98 ("The interests of the proposed class representatives, Duling, Anderson and Sewer, are well aligned with those of the absent class members.").

### E.  Certification Is Proper Under Rule 23(b)(3).

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

### 1.    Common Questions Predominate.

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof."  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (internal quotation marks omitted), *abrogated on other grounds by Miles v. Merrill Lynch & Co.* (*In re Initial Pub. Offering Sec. Litig.*), 471 F.3d 24 (2d Cir. 2006).  The

essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check*, 280 F.3d at 139. Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, all members of the class are unified by common factual allegations – that all class members were subjected to the same discriminatory hiring and promotion policies based on their gender. They are also unified by a common legal theory – that these policies violated Title VII, the NYSHRL, and the NYCHRL. These common issues predominate over any issues affecting only individual Class Members. *See Easterling v. Conn. Dep't of Corr.*, 08 Civ. 826, 2011 WL 5864829, at *8 (D. Conn. Nov. 22, 2011) (holding that individual questions regarding class member status, qualifications, and mitigation were less substantial than the issues that were subject to generalized proof, including whether the challenged physical fitness test had a disparate impact on female applicants; whether that impact was justified by business necessity; the total amount of back pay, the rate at which those women would have been paid; the total number of priority hiring slots that should be awarded, if any; and the total amount of front pay); *United States v. City of New York*, 276 F.R.D. 22, 48-49 (E.D.N.Y. 2011) (finding that common issues, including the aggregate amount of relief available and the criteria used to establish who is eligible to receive retroactive seniority and priority hiring relief, predominated in a disparate impact case challenging a written entrance examination, despite individual questions regarding claimants' mitigation efforts).

### 2.   A Class Action Is a Superior Mechanism.

Rule 23(b)(3)'s second part analyzes whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf*

*Corp.*, 406 F.2d 291, 301 (2d Cir. 1968).  Rule 23(b)(3) sets forth a non-exclusive list of relevant

factors, including whether individual class members wish to bring, or have already brought,

individual actions; and the desirability of concentrating the litigation of the claims in the

particular forum.  Fed. R. Civ. P. 23(b)(3).[4]

Class adjudication of this case is superior to individual adjudication because it will

conserve judicial resources and is more efficient for class members, particularly those who lack

the resources to bring their claims individually.   *See Capsolas v. Pasta Resources, Inc.,* No. 10-

5595, 2012 WL 1656920, at *2 (S.D.N.Y. May 9, 2012).  Here, Plaintiffs and class members

have limited financial resources with which to prosecute individual actions.  Concentrating the

litigation in this Court is desirable because much of the allegedly wrongful conduct occurred

within its jurisdiction.  Employing the class device here will achieve economies of scale for

putative class members, conserve judicial resources, and preserve public confidence in the

system by avoiding repetitive proceedings and preventing inconsistent adjudications.  *See*

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998) (class action superior when

individual claims would burden judiciary, be inefficient for plaintiffs, and yield inconsistent

results); *Mayer v. Driver Solutions, Inc.*, No. 10 Civ. 1939, 2012 WL 453234, at *2 (E.D. Pa.

Feb. 13, 2012).

---

[4]      Another factor, whether the case would be manageable as a class action at trial, is not of
consequence in the context of a proposed settlement.  *See Amchem*, 521 U.S. at 620
("[c]onfronted with a request for settlement-only class certification, a [trial] court need not
inquire whether the case, if tried, would present intractable management problems, . . . for the
proposal is that there be no trial") (internal citation omitted); *Frank*, 228 F.R.D. at 183 ("The
court need not consider the [manageability] factor, however, when the class is being certified
solely for the purpose of settlement.").  Moreover, denying class certification on manageability
grounds is "disfavored" and "should be the exception rather than the rule."  *In re Visa Check*,
280 F.3d at 140 (internal quotation marks omitted).

**III.     Plaintiffs' Counsel Should Be Appointed as Class Counsel.**

This Court has already appointed Outten & Golden LLP as Class Counsel pursuant to Rule 23(g), which governs the appointment of class counsel for a certified class.  *See Duling,* 267 F.R.D. at 99 ("the Court is persuaded, and Defendants do not dispute, that Plaintiffs' counsel are experienced and well qualified to conduct the instant litigation").  Rule 23(g) sets forth four criteria courts must consider in evaluating the adequacy of proposed counsel: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A).

Plaintiffs' counsel meets all relevant criteria.  They did substantial work identifying, investigating, prosecuting, and settling the claims; have substantial experience prosecuting and settling wage and hour class actions; are well-versed in wage and hour and class action law; and are well-qualified to represent the interests of the class.  Bien Decl. ¶¶ 7, 9, 10-18.  Courts have repeatedly found Plaintiffs' counsel to be adequate class counsel in Title VII cases.  *See, e.g., Easterling v. Connecticut, Dept. of Corr.,* 265 F.R.D. 45, 51 n.2  (D. Conn. 2010) (finding Outten & Golden LLP to "be qualified, experienced, and generally able to conduct the proposed litigation" in a Title VII disparate impact class action), *modified sub nom. Easterling v. Connecticut Dept. of Corr.*, No. 3:08 Civ. 826, 2011 WL 5864829 (D. Conn. Nov. 22, 2011); *Duling*, 267 F.R.D. at 99 (appointing Outten & Golden LLP as class counsel and finding them "experienced and well qualified to conduct the instant [Title VII class action] litigation"); *see also* Bien Decl. ¶9.

**IV.     The Proposed Notice and Claim Form Is Appropriate.**

The contents of the proposed Notice and Claim Form, which are attached as Exhibit C and D to the Bien Decl., fully comply with due process and Federal Rule of Civil Procedure 23. Pursuant to Rule 23(c)(2)(B), the notice must provide:

> the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The Notice satisfies each of these requirements.  It also explains the allocation formula, the basis on which each class member's award was determined, the allocation of attorneys' fees and costs, and provides specific information regarding the date, time, and place of the final approval hearing and how to object to or exclude oneself from the settlement.  This information is adequate to put class members on notice of the proposed settlement and is well within the requirements of Rule 23(c)(2)(B).

The proposed settlement procedure provides that the claims administrator will mail the Notice and Claim Form to the last known address of each class member within 10 days of the Court's preliminary approval order.  The claims administrator will take all reasonable steps to obtain the correct address of any class members for whom notices are returned as undeliverable. Class Members will have thirty days to opt out of or object to the settlement and 60 days to return their Claim Form.  The claims administrator will mail class members their payments within 21 days of (a) receipt by the Settlement Class Administrator of a final list approved by

Class Counsel, including dates of employment; or (b) the Final Approval Date, whichever is later.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court preliminarily approve the settlement, conditionally certify the settlement class, appoint Plaintiffs' counsel as Class Counsel, approve the Settlement Notice and Claim Form, and enter the proposed Order.

Dated:  August 10, 2012
       New York, New York

Respectfully submitted,

**OUTTEN & GOLDEN LLP**

/s/  Rachel Bien
Rachel Bien

**OUTTEN & GOLDEN LLP**
Adam T. Klein
Lewis M. Steel
Rachel Bien
Delyanne D. Barros
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

*Attorneys for Plaintiffs and the Class*